UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUSTIN PHILLIPS,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  20-1518** |
| **MAGNUM SYSTEMS, INC, ET AL.,**<br>    **Defendants** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment by Defendant, Camcorp, Inc., (Camcorp).[1] Also before the Court is a motion for summary judgment filed by Defendant United Specialty Insurance Company (United Speciality), Camcorp's insurer.[2] Plaintiff filed an opposition to Camcorp's and United Specialty's motions for summary judgment.[3] Because Plaintiff's opposition was defective in some respects, the Court ordered Plaintiff to file a supplemental opposition,[4] and Plaintiff did so.[5] Camcorp[6] and United Speciality[7] each filed a reply.

## BACKGROUND

On or about January 30, 2020, Plaintiff filed a petition for damages in Civil District

---

[1] R. Doc. 47.

[2] R. Doc. 66. The only allegation against United Specialty is that it is liable as the alleged general and/or commercial liability insurer of Camcorp. *See* R. Doc. 25 at ¶ 8; *see also* R. Doc. 66-2 at ¶ 3. In its memorandum in support of its motion for summary judgment, United Specialty states it "adopts and incorporates herein the Memorandum in Support and Exhibits attached thereto filed on behalf of Defendant, Camcorp, Inc., as though copied herein in extenso." R. Doc. 66-1 at p. 1. United Specialty further asserts Plaintiff cannot prove Camcorp is liable or at fault, and that, therefore, the Court should grant the motions for summary judgment in favor of Camcorp and United Specialty. R. Doc. 66-1 at p. 2–3. This Order therefore focuses on whether Camcorp is entitled to summary judgment, and, if so, United Specialty also is entitled to summary judgment.

[3] R. Doc. 79, 94.

[4] R. Doc. 85.

[5] R. Doc. 94.

[6] R. Doc. 89.

[7] R. Doc. 93.

Court for the Parish of Orleans.[8] Plaintiff's state court petition alleges the amputation of

his two fingers was directly and proximately "caused by the negligence and products

liability of the defendants Magnum Systems, Inc., Smoot Company, Camcorp, Inc., and

Taylor Products, Inc."[9] The petition alleges the Smoot "airlock system" was unreasonably

dangerous in design and composition.[10] The petition further alleges defendants placed

into commerce an unreasonably dangerous airlock system, and that defendants failed to

warn of inherent dangers in the airlock system.[11]

Camcorp filed a motion for summary judgment,[12] asserting it is an undisputed fact

that Camcorp did not design or manufacture the Smoot airlock system.[13]

## FACTS

Most of the material facts are not in dispute. On or about February 9, 2019, Plaintiff

Justin Phillips (Plaintiff) was working at Transportation Consultants, Inc., (TCI).[14]

Plaintiff was operating one of TCI's two PVC-powder bagging systems on the night of the

incident.[15] Plaintiff was responsible for hanging product bags on a machine that filled the

product bags with PVC powder from a rail car immediately outside TCI's plant.[16] At some

point, the Smoot airlock system in use in one of the bagging systems at TCI's plant became

clogged with debris that had to be removed in order to continue the bagging operations.[17]

Plaintiff's co-employee activated the shut-off system designed to stop the movement

---

[8] *See* R. Doc. 47-1.
[9] *Id.* at ¶ IV.
[10] *Id.* In his supplemental memorandum in opposition to the motions for summary judgment, Plaintiff describes the system as a "Smoot airlock system." R. Doc. 94 at p. 2. The Court will refer to the allegedly defective product as the Smoot airlock system.
[11] *Id.*
[12] R. Doc. 47-6 at pp. 5–6; *see also* R. Doc. 47-7 at p. 2.
[13] R. Doc. 47-7 at ¶ 6.
[14] *Id.* at ¶ 1; R. Doc. 94 at p. 1.
[15] *Id.*; *See also* R. Doc 79-3 at pp. 5, 86.
[16] R. Doc. 47-7 at ¶ 2; R. Doc. 94 at p. 1.
[17] *Id.* at ¶ 3; R. Doc. 94 at p. 1.

within the Smoot airlock system so Plaintiff could safely remove the debris.[18] The shut-off system, however, malfunctioned, and movement within the Smoot airlock system was not stopped.[19] When Plaintiff placed his hand "within the system to clean out the debris, he suffered a partial amputation of two fingers due to continue[d] movement of the blades within the airlock system."[20]

The Camcorp filter receiver unit and the Smoot airlock system are components of TCI's bagging system.[21] The parties agree that Camcorp manufactured the filter receiver unit.[22]

Camcorp asserts it is an undisputed fact that "Camcorp, Inc. did not design or manufacture the airlock system complained of."[23] Plaintiff denies this and argues "Camcorp is properly considered the 'manufacturer' of the Smoot FT16 airlock by virtue of its incorporation into the design of the overall system developed by Camcorp."[24] Plaintiff argues summary judgment should be denied because there is a genuine issue of material fact as to whether Camcorp incorporated the Smoot airlock "into the design of the overall system" within the meaning of Louisiana Revised Statutes section 9:2800.53(1)(c).[25]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] R. Doc. 47-3 at p. 3; R. Doc. 79-3 at p. 5.
[22] R. Doc. 79 at pp. 1, 4, and 8.
[23] R. Doc. 47-7 at ¶ 3.
[24] R. Doc. 79 at p. 2.
[25] *Id.* at pp. 2-3.

3

of law."[26] "An issue is material if its resolution could affect the outcome of the action."[27] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[28] All reasonable inferences are drawn in favor of the non-moving party.[29] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[30]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[31] To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[32] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[33]

---

[26] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[27] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[29] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[30] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[31] *Celotex*, 477 U.S. at 323.
[32] *Id.* at 331.
[33] *Id.* at 322–24.

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[34] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[35] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[36] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[37]

## LAW AND ANALYSIS

Under the Louisiana Products Liability Act (LPLA), the "manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous," for its reasonably anticipated

---

[34] *Id.* at 331–32 (Brennan, J., dissenting).
[35] *See id.* at 332.
[36] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[37] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

uses.[38] "The claimant has the burden of proving," *inter alia*, that the defendant is the "manufacturer" of the product.[39] A manufacturer is a person who manufactures a product.[40] Manufacturing a product is defined as "producing, making, fabricating, constructing, [or] designing" a product.[41] Under the LPLA, "manufacturer" also includes "[a] manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer."[42]

In its motion for summary judgment, Camcorp argues it is entitled to summary judgment as a matter of law because Plaintiff cannot carry his burden to show the Smoot airlock system that injured Plaintiff was "manufactured" by Camcorp, as the term "manufacturer" is defined by the LPLA.[43] In its statement of uncontested material fact, Camcorp asserts it "did not design or manufacture the airlock system complained of."[44] To show that it did not manufacture the Smoot airlock system, Camcorp first points to Plaintiff's petition for damages which alleges Plaintiff was cleaning out "the *Smoot* airlock in use at the employer's facility" on the date of the accident because it had become clogged with debris.[45] Camcorp also points to the deposition of Frank Waldrup, a TCI supervisor, in which Waldrup testified he believed the airlock was manufactured by an entity other than Camcorp because another entity's name is found on the side of the airlock, namely Smoot.[46] Camcorp also attached the affidavit of Joseph Whelan, strategic advisor and former president of Camcorp, affirming that "Camcorp did not design, manufacture, or

---

[38] La. R.S. § 9:2800.54.A.
[39] La. R.S. § 9:2800.54.D.
[40] La. R.S. § 9:2800.53(a).
[41] La. R.S. § 9:2800.53(1).
[42] La. R.S. § 9:2800.53(1)(c).
[43] R. Doc. 47.
[44] R. Doc. 47-7 at ¶ 6.
[45] R. Doc. 89 at p. 1; R. Doc. 47-1 at ¶ 3. (emphasis added)
[46] R. Doc. 47-2.

distribute the airlock at issue in this litigation."[47]

In his opposition to Camcorp's motion for summary judgment, Plaintiff does not dispute, and, indeed, concedes that Camcorp did not produce, make, fabricate, construct, or design the Smoot airlock system itself.[48] The Court agrees with Camcorp that it is undisputed Camcorp did not construct, fabricate, design or otherwise provide the Smoot airlock system.

Instead, Plaintiff's opposition relies entirely on the argument that Camcorp is a manufacturer within the meaning of the LPLA because Camcorp incorporated the Smoot airlock system into the *design* of its filter receiver unit.[49] In his opposition, Plaintiff argues

> Camcorp and its insurer seek summary judgment in this matter based upon the simple assertion that Camcorp did not design, manufacture, or sell the Smoot FT16 airlock that was involved in Mr. Phillip's accident. This argument is unavailing because, under the terms of the Louisiana Products Liability Act, Camcorp is properly considered the "manufacturer" of the Smoot Ft16 airlock by virtue of its incorporation into the design of the overall system developed by Camcorp.[50]

Plaintiff relies on La. R.S. § 9:2800.53(1)(c), which further defines "manufacturer" for purposes of the LPLA as "[a] manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer."[51]

Plaintiff's argument that Camcorp is a manufacturer of the Smoot airlock system because Camcorp incorporated the Smoot airlock system into the design of its filter receiver unit must be rejected. Louisiana Revised statutes § 9.2800.53(1)(c) includes in the definition of a manufacturer one "who incorporates into the product a component or

---

[47] R. Doc. 47-5 at p. 3.
[48] *See* R. Doc. 79.
[49] *Id.* at p. 2.
[50] *Id.*
[51] La. R.S. § 9.2800.53(1)(c).

part manufactured by another manufacturer."[52] This statute refers to physical incorporation or installation of a component part, and not, as Plaintiff has alleged here, to nothing more than "incorporation into an overall design."[53] "The law treats product assemblers as manufacturers," thus, one who assembles component parts manufactured by another into his own product will be treated as a manufacturer of the component parts.[54]

Courts applying the LPLA have adopted this principle.[55] Louisiana cases applying § 9:2800.53(1)(c), which codified pre-LPLA case law, all involve the physical incorporation or installation of a defective component part, *not* the incorporation of a product into the design of another product.[56]

Plaintiff argues only that Camcorp incorporated the Smoot airlock system into the "overall design" of its filter receiver unit.[57] Louisiana Revised statutes § 9:2800.53(1)(c) does not define a manufacturer as one who incorporates a product into its design.[58]

---

[52] *Id.*

[53] R. Doc. 79 at p. 2.

[54] Am. L. Prod. Liab. 3d § 8:2.

[55] *See Newman v. General Motors Corp.*, 524 So. 2d 207, 209 (La. Ct. App. 4th Cir. 1988) (holding that, under Louisiana law, "[a] manufacturer cannot be held liable in a product liability claim where it shows that it did not manufacture or install the component of the product alleged to be defective.") *See also McKinny v. Superior Van & Mobility*, No. 20-1169, 2021 WL 1699885; *Credeur v. Jayco, Inc.* 916 So. 2d 1244 (La.App. 3d Cir. 2005), *writ denied*, 925 So. 2d 1229 (La. 2006) and *writ denied*, 925 So. 2d 1236 (La. 2006); *Bearly v. Brunswick Mercury Marine Div.*, 888 So. 2d 309 (La.App. 2d Cir. 2004) *Penn v. Inferno Mfg. Corp.*, 199 So. 2d 210 (La. Ct. App. 1st Cir.), *writ ref'd,* La. 1967).

[56] These cases examine whether the defective product was physically incorporated into a product and not whether the product was incorporated into the design of a product. *See, e.g., Credeur*, 916 So. 2d 1244 (manufacturer of a camper who incorporated a defective stove manufactured by a third party into the camper can be held liable as the manufacturer of the defective stove by virtue of incorporation); *Newman*, 524 So. 2d 207 (manufacturer of cab and chassis cannot be held liable as manufacturer of trailer in products liability action where the defect causing plaintiff's injury was associated with the trailer and where manufacturer of cab and chassis showed that it did not manufacture cab and chassis and that cab and chassis was not equipped with a trailer when it was purchased); *Johnson v. Transwood*, No. 14-cv-102, 2015 WL 5680369 at *1 (M.D. La. 2015) (holding that manufacturer of PTO unit could not be held liable for defect in PTO shaft where both products were shown to be distinct components of a PTO shaft system, plaintiff claimed the PTO shaft was the unreasonably dangerous component, and manufacturer of PTO unit did not manufacture or install the PTO shaft).

[57] *See* R. Doc. 79 at p. 2.

[58] *See* La. R.S. § 9:2800.53(1)(c).

Even assuming Plaintiff's argument is correct, the evidence does not show that Camcorp incorporated the Smoot airlock system into the design of its filter receiver unit. Plaintiff argues this is a genuinely disputed fact.[59] In support of this argument, Plaintiff points to a diagram of Camcorp's filter receiver unit.[60] The Camcorp diagram shows the design and specifications of Camcorp's "45SFPRB24 FILTER RECEIVER." The diagram shows the Camcorp filter receiver unit receiver has a 12-inch diameter discharge opening "TO MATCH FT16 ROTARY AIRLOCK (BY OTHERS)."[61]

Attached to Camcorp's reply is the deposition of Joseph Whelan, who was asked why the filter receiver diagram referenced the Smoot airlock system.[62] Joseph Whelan testified the Smoot airlock system was referenced in the diagram because this airlock system was something identified by its customer, IMC, and that "all we [Camcorp] did was provide the filter receiver. We didn't do the rest of the system."[63] The diagram of the filter receiver unit, including the statement that the 12-inch diameter discharge matches the Smoot FT16 rotary airlock, does not create a genuine factual dispute as to whether Camcorp incorporated the Smoot airlock system into the design of its filter receiver unit.

The evidence presented demonstrates Camcorp manufactured and supplied the filter receiver unit, which was one component of the powder bagging system. The Smoot airlock system is another, separate component within the powder bagging system. It is an undisputed fact that Camcorp did not manufacture the Smoot airlock system or physically incorporate the Smoot airlock system into its filter receiver unit.

---

[59] R. Doc. 94 at p. 2.
[60] R. Doc. 79-3 at p. 84. *See also* R. Doc. 79-1 at p. 2.
[61] R. Doc. 79-3 at p. 84.
[62] R. Doc. 89 at p. 8.
[63] *Id.*

## CONCLUSION

**IT IS ORDERED** that Camcorp, Inc.'s motion for summary judgment,[64] and United Specialty Insurance Company's motion for summary judgment,[65] are **GRANTED**. Summary judgment is awarded in favor of Camcorp, Inc. and United Specialty Insurance Company, and against Plaintiff Justin Phillips.

**New Orleans, Louisiana, this 3rd day of August, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[64] R. Doc. 47.
[65] R. Doc. 66.